UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GARY PARROT,                    )
                                )
                 Plaintiff      )
                                )
                                )
          v.                    )  Civil Action No. 13-30007-MAP
                                )
MICHAEL ASHE and                )
DEVAL PATRICK,                  )
                                )
                 Defendants     )

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANTS' MOTIONS TO DISMISS (Document Nos. 11 and 16)
February 4, 2014

NEIMAN, U.S.M.J.

Gary Parrot ("Plaintiff"), proceeding *pro se*, brings this action against Michael Ashe and Deval Patrick ("Defendants") asserting what appears to be Eighth Amendment deliberate indifference claims regarding events which occurred while he was incarcerated at the Hampden County House of Correction. Defendants' motions to dismiss have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the following reasons, the court will recommend that Defendants' motions be granted.

I. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept the allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir.

1992).[1]  Although "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir. 2010), the Supreme Court made clear under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that only a complaint that states a plausible claim for relief on its face will survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  Still, a *pro se* plaintiff is "entitled to liberal construction of his allegations, no matter how inartfully pled."  *Stern v. Haddad Dealerships of the Berkshires, Inc.*, 477 F. Supp. 2d 318, 321 (D. Mass. 2007).

## II.  PLAINTIFF'S COMPLAINT

The following facts come from Plaintiff's complaint.  The facts and all reasonable inferences are stated in a light most favorable to Plaintiff as the party opposing dismissal.  *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002).

On April 4, 2012, Plaintiff was extradited to the Hampden County House of Correction ("HCHC") and held on a violation of probation charge.  (Complaint ¶ 5.)  During his intake, medical staff informed Plaintiff that he could not use important prescription medication which he had been using outside of HCHC.  (Id. ¶ 6.)  Medical

---

[1]  To the extent Defendants seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, the same standard of review applies.  *See Cintron-Luna v. Roman-Bultron*, 668 F.Supp.2d 315, 316 (D.P.R. 2009) (citing *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994))

staff instead gave Plaintiff "other ineffective medications"; he "complained about their negative side effects," but the medical staff ignored his complaints. (Id. ¶ 7.) In May of 2012, Plaintiff suffered a stroke "due to being forced such ineffective medications," which Plaintiff's cell mate witnessed. (Id. ¶¶ 8, 10.) Medical staff at HCHC, however, did not learn about the stroke until June of 2012. (Id. ¶ 8.) In September of 2012, "Baystate Medical Center confirmed the presence of a thrombolytic stroke" which caused Plaintiff to suffer permanent loss of vision. (Id. ¶ 9.) The vision loss could have been avoided "had medical [staff] at [HCHC properly] responded" to the stroke. (Id. ¶ 10.)

In September of 2012, Plaintiff "was diagnosed with Kidney Cancer by the Pioneer Valley Urology." (Id. ¶ 11.) Plaintiff, however, has not received treatment at HCHC for his cancer. (Id. ¶ 12.) Rather, the "issue of cancer has been open ended since diagnosis." (Id.)

### III. DISCUSSION

Defendants argue that Plaintiff's complaint should be dismissed on three separate grounds. First, Defendants argue that they have only been sued in their official capacities and, as such, they are protected by Eleventh Amendment state sovereign immunity. Second, Defendants argue that Plaintiff failed to state a claim upon which relief may be granted because he pled no facts against either defendant. And third, Defendants argue that Plaintiff failed to comply with Fed.R.Civ.P. 4(m) by serving process over 120 days after filing the complaint. The court finds Defendants' first and second arguments persuasive and therefore will recommend dismissal on those grounds alone.

A. <u>Official Capacity</u>

To the extent Plaintiff has sued Defendants in their official capacities for damages, those claims are clearly barred by the Eleventh Amendment. As to Deval Patrick, the Governor of Massachusetts, the Supreme Court has explained that "a suit against a state official in his or her official capacity is not a suit against the official but, rather, is a suit against the official's office" and, therefore, "is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, it is well established that Eleventh Amendment state sovereign immunity prohibits individual damages suits against non-consenting states in federal court, *Coffeshall v. Massachusetts Bd. Of Registration of Psychologists*, 604 F.3d 658, 662 (1st Cir. 2010), and there is no indication that Massachusetts has consented to the instant suit. Accordingly, any official-capacity damages claim against Patrick is not viable.

The same holds true for any official-capacity claim against Sheriff Michael Ashe of the Hampden County Sheriff's Department. The background for this conclusion was explained in *Gallo v. Essex County Sheriff's Dep't*, 2011 WL 1155385, at *1 (D.Mass. March 24, 2011), quoted to substitute "Hampden" for "Essex" County:

> In 1999, the Massachusetts legislature abolished the governments of six counties, including [Hampden] County, Act of Nov. 16, 1999, ch. 127, as codified in MASS. GEN. LAWS ch. 34B § 1. Under the applicable legislation, all of [Hampden] County's 'functions, duties and responsibilities . . . including, but not limited to, the operation and management of the county jails and house of correction . . . [were] transferred . . . to the commonwealth. MASS. GEN. LAWS ch. 34B, § 4. In addition, the Commonwealth assumed '[a]ll valid liabilities and debts of' [Hampden] County, *id.* § 5, and obtained all its 'rights, titled and interest in real and personal property,' *id.* § 6(a), and '[a]ll valid leases and contracts,' *id.* § 7."

Further, the court explained, "[t]he sheriff of each abolished county became 'an employee of the commonwealth with salary to be paid by the commonwealth," and "[e]ach employee of a sheriff became an 'employee' or 'public employee' as defined in MASS. GEN. LAWS ch. 150E, §1, and the sheriff became an 'employer' or 'public employer.'" *Id.* (citing MASS. GEN. LAWS ch. 34B, §§ 12 and 13). Therefore, the Hampden County Sheriff's Department is an "arm" of the Commonwealth and Michael Ashe in his official capacity is immune from a suit for damages in federal court under the Eleventh Amendment. See *Maraj v. Massachusetts*, 836 F.Supp.2d 17, 24-25 (D.Mass. 2011); *Kelley v. DiPaola*, 379 F.Supp.2d 96, 100 (D.Mass. 2005); *Brown v. Massachusetts*, 2012 WL 588800, at *4 (D.Mass. Feb. 21, 2012); *Gallo*, 2011 WL 1155385, at * 3-5.

There is, however, one wrinkle. In addition to seeking "damages in the form of $250 Million Dollars," Plaintiff, in his complaint, also requests "expungement of his criminal record for being mistreated by the Commonwealth of Massachusetts while incarcerated." (Complaint ¶ 13.) Pursuant to the exception established in *Ex parte Young*, 209 U.S. 123 (1908), "the Eleventh Amendment does not bar claims for prospective injunctive relief against state officials in their official capacities." *Negron-Almeda v. Santiago*, 579 F.3d 45, 52 (1st Cir. 2009). But even assuming that expungement constitutes prospective injunctive relief, which is doubtful, *see, e.g., McGee v. Feneis*, 2009 WL 2928245, at *5 (D.Minn. Sept. 8, 2009) ("An expungement is retroactive relief because it does not prevent a continuing or ongoing violation of federal law – it simply changes the effect of an event that happened in the past."), the court, as Defendants argue, has no authority to order that Plaintiff's state criminal

records be expunged. *See Dennis v. Nat'l Railroad Passenger Corp.*, 34 Fed.Appx. 950 (4th Cir. 2002) (unpublished) ("Expungement of a state criminal record must be sought through the state court system."); *Belill v. Hummel*, 1987 WL 24114, at *5 (6th Cir. Dec. 1, 1987) (unpublished) (holding that federalism and comity principles prohibited the district court from ordering that the plaintiff's state criminal record be expunged, "which would necessarily imply that [the] plaintiff's state court conviction was invalid"); *Azeez v. Keller*, 2010 WL 1380024, at *4 (S.D.W.Va. April 1, 2010) ("Plaintiff's Motion for Expungement is precluded by the *Rooker-Feldman* doctrine."); *Paulson v. Snohomish County Washington*, 2009 WL 2987397, at *2 (W.D.Wash. Sept. 14, 2009) ("[I]f Plaintiff is requesting that the Court expunge his record, federal district courts lack jurisdiction to expunge a state criminal record without independent statutory or Constitutional authority."). This is especially true here, where Plaintiff does not challenge his underlying conviction but merely seeks expungement as recompense for the constitutional violations he alleges occurred while he was incarcerated. In short, the court lacks subject matter jurisdiction over Plaintiff's expungement request.[2]

B. <u>Individual Capacity</u>

Defendants also maintain that Plaintiff has not sued them in their individual capacities and, accordingly, dismissal is appropriate. Unlike official-capacity claims

---

[2] The court would lack jurisdiction to expunge Plaintiff's criminal records even if they were *federal* criminal records. In *United States v. Coloian*, 480 F.3d 47 (1st Cir. 2007), the First Circuit held that district courts lack subject matter jurisdiction to expunge federal criminal records "based solely on equitable grounds," which the court described as "grounds that rely only on notions of fairness and are entirely divorced from legal considerations." Plaintiff's request for expungement here relies solely on equitable grounds, *i.e.*, "for being mistreated by the Commonwealth of Massachusetts while incarcerated."

against state officials, individual-capacity claims are not barred by the Eleventh Amendment. *Guillemard-Ginorio v. Conteras-Gomez*, 585 F.3d 508, 531 (1st Cir. 2009). Because Plaintiff did not indicate in his complaint the capacity under which he is suing Defendants, the court must look to the "the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability." *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004) (quoting *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993)). As Defendants point out, there are no factual allegations against either defendant, which suggests that the suit is not for individual liability. It is also significant that Defendants both raised their capacity arguments in their motions to dismiss, yet Plaintiff, in his opposition, failed to refute those arguments or otherwise indicate that he intended to sue Defendants in their individual capacities. The court is therefore inclined to agree with Defendants that they have only been sued in their official capacities.

     Even if Defendants have been sued in their individual capacities, however, the court concludes that Plaintiff has failed to state a claim upon which relief can be granted due to his failure to allege any cogent facts against them. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.'" *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 146, 156 (1st Cir. 2006) (quoting *Cepero-Rivera*, 414 F.3d at 129)). No such participation is alleged here.

     Even if Plaintiff were intending to assert supervisory liability claims, such claims should be dismissed. "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate officer and the supervisor, whether through direct participation

or through conduct that amounts to condonation or tacit authorization.'" *Id.* (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)).  Again, Plaintiff alleges no such facts against these Defendants, nor any affirmative link to the alleged misconduct.

## IV. CONCLUSION

For the reasons stated, the court recommends that Defendants' motions to dismiss be ALLOWED.[3]

DATED: February 4, 2014

/s/   Kenneth P. Neiman  
KENNETH P. NEIMAN  
U.S. Magistrate Judge

---

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  See *Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  See also *Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.